DIXON, JUDGE:
Lafferty Enterprises, Inc. d/b/a Trans-Star Ambulance Service ("Trans-Star") appeals from the Franklin Circuit Court's opinion and order entered October 5, 2017, reversing the final order of the Cabinet for Health and Family Services ("Cabinet"). In this order the court found that Jan-Care *87 Ambulance Service, Tri-State Division Incorporated ("Jan-Care") violated Kentucky's Certificate of Need ("CON") laws and licensure requirements because it was not exempt from compliance under federal preemption through its contracts with the Veterans Administration ("VA"). Trans-Star further appeals from the circuit court's order denying reconsideration of its October 5, 2017, opinion and order. After careful review of the briefs and the law, we affirm.
Jan-Care is a West Virginia corporation providing ambulance services. In 2005, following the VA's Request for Proposals ("RFP") and Jan-Care's bid to provide services, Jan-Care was awarded a contract with the VA to service patients of the Huntington VA Hospital in parts of West Virginia, Kentucky,[1] and Ohio. After being awarded this contract, Jan-Care provided ambulance services in Kentucky without obtaining either a Kentucky CON or Kentucky license. Jan-Care also subcontracted with other ambulance services, including Trans-Star, to provide services in Kentucky pursuant to its VA contract.
Of relevance to the issues before us, page 16, paragraph 9(c), of the contract provided:
[t]he VA will place calls directly with the contractor, if the contractor does not have an ambulance available or is not licensed to provide services to a particular area, the contractor is responsible to coordinate the trip with another licensed ambulance provider.
Additionally, page 20, section 52.252-2 CLAUSES INCORPORATED BY REFERENCE, of the contract included 852.237-70 CONTRACTOR RESPONSIBILITIES, referring to 48 C.F.R.[2] 852.237-70 of the Federal Acquisition Regulations ("FAR") - which is mirrored by the VA Acquisition Regulation ("VAAR") - providing in pertinent part:
[t]he contractor shall obtain all necessary licenses and/or permits required to perform this work.
This contract was extended until the VA issued another RFP for which Jan-Care submitted its bid[3] resulting in their 2012 contract which contained substantive revisions.[4] Notably, the language of the previous contract's paragraph 9(c), quoted above, was not included in the 2012 contract.[5] Instead, the 2012 contract included a state-specific requirement for licensure in West Virginia. By contrast, it contains no requirement for Kentucky licensure. In 2013, Jan-Care ceased using subcontractors to fulfill its VA contract.
On July 1, 2014, as a result of a complaint by Trans-Star, the Kentucky Board of Emergency Medical Services ("KBEMS") sent a cease and desist letter to Jan-Care concerning its Kentucky operations without Kentucky licensure. Jan-Care responded asserting its VA contract preempted Kentucky licensure requirements. On July 25, 2014, KBEMS replied advising it did not intend to take further action against Jan-Care, pending the Cabinet's issuance of an advisory opinion - which was subsequently never requested or issued.
In 2015, Trans-Star sued Jan-Care in federal court alleging Jan-Care was filing *88 false or fraudulent claims with the VA in violation of the False Claims Act ("FCA"), citing 31 U.S.C.[6] 3729- 3733. The federal court dismissed this action with prejudice in 2016 for failure to state a claim upon which relief could be granted.[7]
In 2016, during the pendency of the federal action, Trans-Star filed a complaint as an affected party, by being a competitor, with the Cabinet alleging Jan-Care was transporting patients in Kentucky in violation of Kentucky law. Trans-Star requested the Cabinet commence show cause proceedings against Jan-Care based on its amended complaint in the federal action. Jan-Care moved to dismiss the show cause proceedings to which Trans-Star responded. In lieu of a hearing, the hearing officer entered a recommended order in favor of granting Jan-Care's motion to dismiss based on federal preemption. Specifically, the hearing officer found the VA runs under the contract were not subject to Kentucky CON laws. Trans-Star filed exceptions to the recommended order to which Jan-Care responded. The Cabinet remanded the matter for further proceedings to conduct a hearing and take evidence to more fully develop the record to allow it to determine whether preemption applied.
The show cause hearing took place on September 29 and 30, 2016, with both parties presenting witnesses and documents. Thereafter, the hearing officer entered his second recommended order finding that the language of the 2005 contract:
contemplates that the VA contractor will be licensed to provide ambulance services in the areas covered by the contract. Therefore rendering any argument that the VA Contract preempts Kentucky CON and licensing laws moot. Even if the VA Contract were to preempt Kentucky CON and licensing laws, the VA contract itself requires licensing in the covered areas; a license which Jan-Care does not possess. As a result Jan-Care has failed to meet their burden of proof that they are not operating a health facility or health service in violation of the provisions of KRS[8] Chapter 216B or KAR[9] Chapter 6.
....
Based on the only guidance available, Medcorp, AHB CON 05-296 SC, Jan-Care's operation, whether pursuant to the VA Contract or not, constitutes a single, willful violation.
(Footnotes added). The hearing officer further recommended that a fine of $10,000.00 be imposed upon Jan-Care for its violation. The parties filed exceptions. The Cabinet adopted the hearing officer's second recommended order in its entirety and imposed the recommended civil administrative fine in its final order.
Jan-Care thereafter petitioned the Franklin Circuit Court for review, appeal, and stay of enforcement of the Cabinet's final order pending appeal. The circuit court granted the stay. After the matter was fully briefed and a hearing conducted, the circuit court entered its opinion and order reversing the Cabinet's final order. In its conclusion, the circuit court stated:
[e]ssentially this case concerns the misapplication of state CON laws to a wholly distinct program under the purview of *89 the VA. If applied to the VA program, CON laws would impede the VA's objective of transporting veterans to VA facilities in the most cost efficient manner. Forcing the VA transport services to be subcontracted to locally licensed providers would diminish the VA's ability to monitor the care being provided to veterans, adding additional costs to the VA without any appreciable benefits. After sending out RFPs and giving careful consideration to its established criterion, the VA selected Jan-Care as the contractor to provide these services. Nothing in KRS Chapter 216B clearly prohibits the VA from providing these transportation services exclusively to its VA patients without a CON. If the VA or its contractor attempted to provide these medical services to the general public or to non-VA patients, there would be a stronger argument to require a CON. But so long as the medical services at issue are limited to VA patients, and paid for fully by VA appropriations, there is no legal basis to require a CON. After reviewing the record, this Court finds that the federal government's procurement process should not be disturbed, and there is no valid reason under state law to impose a requirement for a CON for the services at issue, so long as those services are limited to VA patients, paid for by VA funds. Requiring a CON would frustrate the federal government's objectives and subvert the federal government's procurement process. Thus, Jan-Care did not violate Kentucky CON and licensing laws by transporting VA patients who happen to reside in Kentucky to receive VA services under its 2012 contract with Jan-Care.
Trans-Star moved the circuit court to reconsider its opinion and order "on the basis of newly discovered evidence not available at the time briefs were submitted or the hearing was held." The "newly discovered evidence" was an updated contract between the VA and Jan-Care, effective October 1, 2017.[10] This contract expressly requires compliance with Kentucky laws on page 8, paragraph 4.2.1, which states:
[a]ll vehicles, personnel, and services rendered by the Contractor shall conform to all federal, state, and local statutes, rules, and regulations; specifically, for the states of West Virginia, Kentucky and Ohio.
After the matter was fully briefed and a hearing conducted, the circuit court entered its order denying reconsideration of its opinion and order reversing the Cabinet's final order. This appeal followed.
On appeal, Trans-Star argues the circuit court's opinion and order reversing the Cabinet was clearly erroneous and contrary to law because: (1) the Cabinet's order was not arbitrary, capricious, or contrary to law and, therefore, should have been affirmed; (2) the circuit court misinterpreted the Cabinet's order by finding it only relied upon the 2005 contract; (3) the Cabinet has regulated the VA, including its contractors; (4) the VA intended for Kentucky CON laws to apply; (5) Kentucky CON laws do not frustrate the VA's objectives; and (6) ambulance transports of veterans by VA contractors are not beyond the scope of Kentucky CON laws. Further, concerning the circuit court's denial of reconsideration, Trans-Star argues that finding the 2017 contract irrelevant was an abuse of discretion, contrary to law.
*90 Concerning the court's review of an administrative agency's - the Cabinet's - actions, it is well-settled that:
[t]he basic scope of judicial review of an administrative decision is limited to a determination of whether the agency's action was arbitrary . Bobinchuck v. Levitch , [380 S.W.2d 233 (Ky. 1964). ] If an administrative agency's findings of fact are supported by substantial evidence of probative value, they must be accepted as binding and it must then be determined whether or not the agency has applied the correct rule of law to the facts so found. Kentucky Unemployment Ins. Comm'n v. Landmark Community Newspapers of Kentucky, Inc. , [91 S.W.3d 575 (Ky. 2002). ] The Court of Appeals is authorized to review issues of law involving an administrative agency decision on a de novo basis. Aubrey v. Office of the Attorney General , [994 S.W.2d 516 (Ky. App. 1998) ]. In particular, an interpretation of a statute is a question of law and a reviewing court is not bound by the agency's interpretation of that statute. Halls Hardwood Floor Co. v. Stapleton , [16 S.W.3d 327 (Ky. App. 2000).]
Liquor Outlet, LLC v. Alcoholic Beverage Control Bd. , 141 S.W.3d 378, 381 (Ky. App. 2004) (emphasis added).
We address Trans-Star's first two arguments in tandem of whether the Cabinet's final order was arbitrary, capricious, or contrary to law, as well as whether the circuit court correctly found the hearing officer and Cabinet only relied upon the 2005 contact. The second recommended order, which was adopted fully by the Cabinet in its final order, makes no mention of any contract between Jan-Care and the VA other than the 2005 contract, which expired on its own terms and was replaced by the 2012 contract several years prior to the initiation of this action. It is clear from a reading of the order that the hearing officer relied solely upon the 2005 contract, which differed substantively from the 2012 contract. As such, we agree with the circuit court's finding that the hearing officer and the Cabinet "erred as a matter of law by failing to consider the contract in effect at the time of the show cause proceedings and by subsequently failing to conduct a preemption analysis." We also note, as will be discussed at greater length below, because regulation of VA contractors and their necessary and required licensure is preempted, neither Trans-Star nor the Cabinet have standing to enforce compliance with these contracts as neither are parties to the contract.
We next turn to Trans-Star's arguments against the circuit court's finding of preemption. Courts have long recognized an automatic presumption against preemption that federal acts ordinarily do not supersede historic police powers of the states. Wyeth v. Levine , 555 U.S. 555, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). This automatic presumption against preemption, however, does not apply in this case due to the unique nature of the VA because "an assumption of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence." U.S. v. Locke , 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). The circuit court correctly found:
[t]his case presents a unique circumstance where the VA is solely operated by the federal government. Traditionally health and safety of a state's citizens fall within the state's police powers; however, in this matter, the state is seeking to apply CON laws to a contractor of the VA. The federal government has historically governed benefits, including healthcare, of Veterans. The federal government's *91 interest in caring for veterans is within the VA's purview and does not fall within the historical police powers of the state. The VA pays for the contracted services through the use of federal funds and the program provides health benefits conferred by the federal government. The state has never regulated the VA by virtue of its police powers, so far as this court is aware. Instead, the VA has traditionally been exempted from state CON laws. When VA facilities expand services, a VA facility does not have to comply with the CON requirements.
State law may be preempted by federal statute or regulation. Hillsborough County, Fla. v. Automated Medical Lab., Inc. , 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). Preemption may also be express or implied. Two types of implied preemption are field preemption and conflict preemption. Field preemption occurs when "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Rice v. Santa Fe Elevator Corp. , 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Conflict preemption occurs when it is impossible to reconcile both state and federal laws or when the state law frustrates the purpose of federal law. State law is invalid when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz , 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
In the instant case, the circuit court found conflict preemption applies, relying on Leslie Miller, Inc. v. State of Ark. , 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956), where the United States Supreme Court was faced with a similar issue concerning whether state licensing laws applied to a federal contractor. The United States was performing construction work on an Air Force Base in Arkansas and accepted a bid from a contractor. The State of Arkansas sued the contractor claiming it violated its licensing laws. The United States Supreme Court found federal procurement law requires the contracting agency to consider factors defining a "responsible" contractor and, thus, subjecting a federal contractor to state contractor licensing requirements would give the state's licensing board the power to review the federal determination of responsibility, frustrating federal policies of selecting its most desired bidder. Id. at 189-90, 77 S.Ct. at 258-59.
Mere enumeration of the similar grounds for licensing under the state statute and for finding "responsibility" under the federal statute and regulations is sufficient to indicate conflict between this license requirement which Arkansas places on a federal contractor and the action which Congress and the Department of Defense have taken to insure the reliability of persons and companies contracting with the Federal Government. Subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of "responsibility" and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder. In view of the federal statute and regulations, the rationale of Johnson v. State of Maryland , 254 U.S. 51, 57, 41 S.Ct. 16, 65 L.Ed. 126 [ (1920) ], is applicable:
It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them *92 and pay a fee for permission to go on. Such a requirement does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed.
Id. (Emphasis added). This holding was based on case law dating at least as far back as 1900 and has been consistently followed with very few distinctions or departures. Its progeny further interpreted it to mean state licensing laws are not "applicable" nor compliance with them "necessary" where they are preempted by federal law. Gartrell Const. Inc. v. Aubry , 940 F.2d 437, 440 (9th Cir. 1991).
In the case at bar, the VA made a need determination concerning ambulance services for its veteran hospital patients stating, "the services under this contract are vital to the Government and must be continued without interruption" and sent out RFP's pursuant to the FAR. After considering and weighing the criteria established under the FAR, the VA found Jan-Care to be "responsible" and contracted with it to provide these ambulance services. Enforcing Kentucky's CON and licensure laws would deprive the VA of its right to select the provider of its choice and would effectively allow the Commonwealth of Kentucky to select the provider instead. There is no doubt that requiring Jan-Care - as the VA's chosen provider - to meet Kentucky requirements would frustrate the VA's objectives. Since there is a clear conflict, federal procurement laws - the FAR and VAAR - as they pertain to the VA contracts for ambulance services to veteran patients of its facility, preempt Kentucky's CON and licensing laws. Additionally, a comparison of the criteria addressed by the Kentucky CON and licensure laws and those addressed by the FAR and VA contracts demonstrate each state requirement is at least generally covered by the federal requirements with significant overlap. We further note, pursuant to Leslie Miller , the contractor responsibilities clauses from the FAR and VAAR found in each of the contracts does not serve to impose any additional state requirements on Jan-Care as Kentucky's CON and licensing laws are neither applicable nor necessary due to conflict preemption.
In its argument concerning who determines whether a VA ambulance contractor must obtain a local license, Trans-Star refers to a decision of the Comptroller General of the United States - B-184384 Matter of: Veterans Administration - Request for Advance Decision dated July 29, 1975 (the "Metro Medic" case) - in which the failure of a contractor to obtain a Certificate of Public Convenience did not ultimately render it ineligible to provide ambulance services in the locality. In that matter the Deputy Comptroller General of the United States cited the office's prior decision, B-125577 dated October 11, 1955, which stated the general rule regarding the effect of state or local laws requiring a license or permit as a prerequisite to performing the type of services required by a federal contract as:
State and municipal tax, permit, and license requirements vary almost infinitely in their details and legal effect. The validity of a particular state tax or license as applied to the activities of a Federal contractor often cannot be determined except by the courts , and it would be impossible for the contracting agencies of the Government to make such determinations with any assurance *93 that they were correct. It is precisely because of this, in our opinion, that the standard Government contract forms impose upon the contractor the duty of ascertaining both the existence and applicability of local laws with regards to permits and licenses.
....
No statute has been brought to our attention which would authorize the inclusion of a condition in Federal contracts or bid invitations that local permits or licenses must be obtained, regardless of their necessity as applied to the work to be done.
(Emphasis added). The deputy comptroller in Metro Medic further explained:
[i]f a State or locality determines that under its laws a Federal contractor must have a license or permit as a prerequisite to its being legally capable of performing the required services for the Federal Government within the State's or locality's boundaries, the State or locality may enforce its requirements against the bidder, provided the application of the law or ordinance is not opposed to or in conflict with Federal policies or laws, or does not in any way interfere with the execution of Federal powers . See CharlesPaul v. United States , 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963).
(Emphasis added). Therefore, as it applies to the case at hand, had Kentucky CON and licensure laws not been preempted by the FAR and federal contract, then the Cabinet could enforce its requirement. However, due to the court's finding of preemption, to the extent the 2005 and/or 2017 contract impose any Kentucky licensure requirements upon Jan-Care, those are matters for the VA to enforce as a party to the contracts, should it so choose, not Trans-Star or the Cabinet.
Trans-Star's final argument is that the circuit court erred by denying reconsideration based on the "newly discovered evidence" of the 2017 contract. We disagree, discerning no error. As discussed at length above, federal procurement laws are in clear conflict with Kentucky's CON and licensure laws as they apply to VA ambulance service contractors and neither Trans-Star nor the Cabinet are proper entities to enforce the terms of the 2017 contract. Therefore, the circuit court's order shall not be disturbed.
For the foregoing reasons, we AFFIRM the orders of the Franklin Circuit Court finding Jan-Care entitled to federal preemption.
ALL CONCUR.

This initial contract included eleven counties in eastern Kentucky.

Code of Federal Regulations.

Trans-Star also submitted a bid for this RFP.

This RFP's service area included twelve counties in eastern Kentucky.

The contractor responsibilities clause from the FAR and VAAR remained.

United States Code.

United States ex rel. Doe v. Jan-Care Ambulance Serv. , 187 F.Supp.3d 786 (E.D. Ky. 2016). Because the case was filed as a qui tam action, the United States was necessarily a party. Additionally, because Trans-Star failed to properly plead or support its claims of fraud, the issue of preemption was not addressed by the federal court.

Kentucky Revised Statutes.

Kentucky Administrative Regulations.

The contractor responsibilities clause from the FAR and VAAR was also included in this contract.